## CROWELL *vs.* GLEASON.

Articles of the peace having been preferred by A. against B., the latter was arrested on a warrant and carried before a magistrate; while thus under arrest, C., the brother of A., proposed to pay B. a certain sum of money and procure the prosecution against him to be stopped, (his sister, the complainant, having her fears quieted,) if he, B., would convey to him, C., a certain parcel of land. B. declined accepting the offer. C. then increased the sum; when B., after taking advice, and deliberating upon the matter, acceded to the proposition, and executed a deed of the land to C. *Held,* that here was no such *duress by imprisonment,* as would enable B. to avoid the deed.

Nor could it be avoided under these circumstances, on the ground that it was not given *freely* and *voluntarily.*

To constitute duress by imprisonment, the original restraint or detention of the person must have been unlawful, or there must have been an abuse of legal process.

In a suit brought by C. against B. to try the title to the land in question, the complaint and warrant in the criminal prosecution, and other evidence, may be introduced to show that the prosecution was not colorable or fraudulent.

In such suit, the acts and declarations of the constable who served the warrant, are not admissible as evidence against C. unless it appear that they were adopted by him, or were done or said in pursuance of a common object.

Where one has preferred articles of the peace against another, for which he has been arrested and an examination had; if, before the magistrate shall have adjudged sureties of the peace to be necessary, the accused has succeeded in quieting and allaying the apprehensions of the complainant, who thereupon intimates a wish to withdraw the prosecution, the magistrate may properly enough permit it, the process having been instituted expressly for the personal benefit of the complainant, though in the name of the State.

TRESPASS, *quare clausum fregit.* The close described in the plaintiff's writ, was about two acres of land, situated in *Waterville,* with a house and barn thereon. The defendant pleaded *soil and freehold* in himself.

To maintain the issue on his part the defendant shew title in one *Smith,* a conveyance from him to one *Lloyd,* and from *Lloyd* to himself; the last, dated *March* 7, 1828.

The plaintiff relied upon a deed from the defendant to himself, dated *April* 15, 1828.

The defendant contended that the deed from himself to the plaintiff, was not made voluntarily, but obtained by duress through fear, and by threats on the part of the plaintiff.

Crowell v. Gleason.

It appeared, that on the day of the date of the deed from the defendant to the plaintiff, the defendant was under arrest, on a warrant issued on the complaint of a *Mrs. Smith*, the sister of the plaintiff. And it was insisted that the plaintiff procured this prosecution, and made use of it to coerce the defendant to give the deed in question.

*Asa Redington, Jr.* a witness for the defendant, testified, that two or three days before the date of the warrant, the plaintiff called on him and complained of the defendant's aggressions on his sister, *Mrs. Smith*, and spoke of it as a State prison offence. That he, the witness, soon after called on *Mrs. Smith*, and satisfied himself that she was well justified in preferring articles of the peace against the defendant. That he accordingly received her complaint, and issued a warrant thereon, which was served by *Joseph Warren*, a constable, and brother-in-law of the plaintiff. He further stated that he was requested to take the examination, and attended at *Mr. Warren's* house for that purpose. That there was much conversation there between the plaintiff, the defendant and others. That the plaintiff said he wished to have his sister quieted, who lived in the house on the premises in question; and to effect this object, he offered the defendant to pay him all he had given for his purchase of *Lloyd*; and interest, and a compensation for his trouble; and that the prosecution should be stopped. This, the defendant declined. The witness then wrote a deed for the consideration of $28, which the defendant refused to execute. The plaintiff then offered more, to wit, $50, and to pay the expenses of the prosecution, which were supposed to be about $5 more. This offer the defendant accepted. The deed was then executed, and a note given for $50, from the plaintiff to the defendant, payable in thirty days. The witness further stated, that though it was not distinctly stated at this time, yet the understanding all along was, that the prosecution should be dropped. The witness added, that the defendant in the whole transaction was moderate, slow and deliberate, and went out several times; that no threats were made by the plaintiff.

*Hiram Warren*, a witness for the plaintiff, also present at the same time, testified, that the defendant, before he executed the

Crowell *v.* Gleason.

deed took the advice of the magistrate, who was a gentleman in the profession of the law.

*Thomas Kimball,* testified, that at the tavern, which was near the place of examination, and prior thereto, but on the same day, *Gleason* appeared distressed and in tears.

With a view to ascertain whether legal process had been abused to serve the plaintiff's purposes, *Weston, J.* who presided at the trial, received in evidence the complaint and warrant before mentioned, together with the testimony of *Mrs. Smith,* the complainant, *Patty Smith,* her daughter, and *Mrs. Pullen,* both of whom were present on the occasion of which *Mrs. Smith* complained. All this testimony was objected to by the counsel for the defendant. From this testimony, if believed, and the witnesses were not impeached, it appeared there was nothing colorable or fictitious in the prosecution.

The counsel for the defendant offered to prove certain acts and declarations of *Warren,* the constable, pending the prosecution, which it was insisted were harsh and oppressive, and tended to aid the improper views imputed to the plaintiff. But the presiding Judge ruled them inadmissible, unless done or said in the presence of the plaintiff, or proved to have been procured or adopted by him, or, unless upon proof of some conspiracy between him and *Warren* to injure the defendant.

The Court instructed the jury that if there was a just foundation for the prosecution, which seemed warranted by the evidence ; the plaintiff being the brother of the complainant, was justified in interfering in her behalf ; that if any arrangement was made which allayed her apprehensions, she had a right to withdraw the prosecution, which was instituted for her protection. And that if her doing so, upon the advice, or by the procurement of the plaintiff, operated as an inducement in the mind of the defendant to make the conveyance, it did not present a case of duress, nor was the deed thereby rendered invalid or inoperative.

The jury returned a verdict for the plaintiff. If the testimony admitted ought to have been rejected ; or that which was rejected ought to have been admitted ; or if the jury were not

properly instructed, the verdict was to be set aside and a new trial granted; otherwise, judgment was to be rendered thereon.

*Wells*, for the defendant, argued that the deed of the defendant to the plaintiff was void, because it was not made *voluntarily*, and cited the following authorities : *Watkins v. Beard*, 6 *Mass.* 506 ; *Starkie on Ev.* 2, 481 ; *Smith v. Jordan*, 15 *Mass.* 113 ; *Somes v. Skinner*, 16 *Mass.* 348 ; *Chase v. Dwinal*, 7 *Greenl.* 134 ; *Jeremy's Chancery*, 393.

In the case under consideration, the defendant was complained against for a criminal offence — the warrant lay upon the table before the parties — and the plaintiff's proposition to the defendant, substantially was, " if you will give me a deed con- " veying certain land, I will give so much money, and this pro- " secution shall stop — otherwise it will go on and you know " the consequences."

Now, how can it be pretended that if the defendant signed the deed under these circumstances, the signing was *voluntary*. And it is of no consequence whether the process by which he was imprisoned was lawful or otherwise. In either case, if he was operated upon by threats, and the deed was not made *voluntarily* and *freely*, it is void.

2. The complaint and warrant were improperly admitted as evidence to the jury. The plea of the defendant was soil and freehold in himself, and the question was whether the defendant's deed was made voluntarily or not. The evidence was impertinent. The complaint is not legal evidence to go to the jury for any purpose except to justify the magistrate. It is indeed no evidence even in the prosecution in which it was made ; it is the mere foundation of the prosecution. But in this case it was permitted to go to the jury as *evidence*.

3. The inquiry whether the defendant was guilty of the offence alleged in the complaint was improperly permitted. It was not pertinent testimony, and was calculated to operate in the minds of the jury injuriously to the defendant. If the defendant had alleged that the prosecution was fictitious and fraudulent, then perhaps the evidence might have been gone into, in order to have met and repelled such allegation. But

Crowell *v.* Gleason.

such was not the case here; the defendant did not pretend that the prosecution was colorable.

4. The acts and accompanying declarations of *Warren* were admissible. It was contended that the plaintiff and officer were engaged in a common object, that is, to procure a conveyance of this land. The defendant therefore wished to show his acts and prove his declarations. Whether there was any connection or conspiracy between the plaintiff and the officer was a question for the jury. *McKenny v. Dingley,* 4 *Greenl.* 172; *Bridge v. Eggleston,* 14 *Mass.* 245; *Sherwood v. Marwick,* 5 *Greenl.* 295.

It is sufficient if the evidence be such as to produce a fair and reasonable presumption of the facts put in issue. 1 *Phil. Ev.* 140, *in notis.*

A concert may be proved by a concurrence of acts and adaptation to the same object. 2 *Stark. Ev.* 399, 401, 407.

5. The taking of the deed under the circumstances was improper and illegal, because it was compromising a criminal prosecution or compounding an offence. 4 *Black. Com.* 135, 363, 364; *Maine Stat. ch.* 7, *sec.* 5.

*Boutelle* and *Sprague,* in arguing for the plaintiff, took positions which are sustained in the opinion delivered by the Court,—commented at length on the cases cited by the counsel on the other side, distinguishing them from this case;—and cited the following additional authorities. 5 *Dane's Abr. ch.* 144, *art.* 1, *sec.* 4. *Worcester v. Eaton,* 11 *Mass.* 268; and the same case in 13 *Mass.* 371; 2 *Stark. Ev.* 42, 43, 44; 1 *Chitty's Crim. Law,* 4 — 6.

The opinion of the Court was delivered by

WESTON J. — The deed, under which the plaintiff holds the premises in question, is attempted to be avoided on the ground, that it was obtained by duress, by threats, or by imprisonment, or upon an illegal consideration, or because not executed freely and voluntarily.

It does not appear from the evidence to have been extorted by threats of any kind. To constitute duress by imprisonment,

the original restraint, or detention of the person, must have been unlawful, or there must have been an abuse of legal process. At the time the deed was executed, the defendant was under arrest, and in order to ascertain the character of the transaction, it became important to determine, first, whether the arrest or imprisonment was legal in point of form, and, secondly, whether it had a lawful foundation, or whether it was got up to oppress the defendant, and to aid the designs of the plaintiff upon his property. In this view, the complaint and warrant were properly admissible in evidence. They were essential to show the lawfulness of the arrest. Without them, duress by imprisonment would very clearly have appeared, which the plaintiff had an undoubted right to repel, by showing that the requirements of law had not been violated in the prosecution, to which he had lent his countenance and support. The facts upon which the complaint and warrant were founded, were examined, and we are satisfied properly, to ascertain whether there was any thing collusive or colorable in the proceedings. The plaintiff was warranted in interposing for the protection of his sister, who had just cause of complaint. As her kinsman, it was lawful for him to aid her in the pursuit of her legal rights, without being liable to the charge of maintenance, or of officiously meddling in an affair, which did not concern him.

The acts and declarations of the constable were not legal evidence against the plaintiff, unless it had appeared that they were adopted by him, or done or said in pursuance of a common object. Of this, there is no evidence whatever. The plaintiff was a relative of the constable; but he is not thereby implicated or made responsible for his acts. It might render it more probable that they would be engaged in a common object, but there must be other evidence than the relationship to render the one accountable for the acts and declarations of the other. The testimony rejected had a tendency to prove that the officer conducted harshly, and had it appeared that the plaintiff had also conducted harshly or oppressively, there would have been such evidence of a common object as might have rendered this testimony admissible. But there is no proof of misconduct on the part of the plaintiff, nor was it proposed to

show any privity between him and the constable, or any assent to what was said or done by him. In *Bridge v. Eggleston*, 14 *Mass.* 245, where the question to be determined was, whether a conveyance of real estate was or was not fraudulent, the acts and declarations of the grantor, prior to the date of the deed, were received to show fraud in him, but expressly upon the ground that there was other evidence tending to show fraud also in the grantee. And it was distinctly decided by the Court, that without the latter, the former would be entirely unavailing.

In *Burdett v. Colman*, 14 *East*, 163, there was no objection to the testimony in regard to the conduct and cries of the mob. *Sir Francis* had declared his intention to yield only to superior force. The mob had interposed in his favour. There was no evidence that he expected or desired their assistance; but he resisted the peaceful execution of the warrant, with which the sergeant at arms was charged; and they manifested a disposition to aid him in the stand he took. Under this aspect of things, the question was, whether the sergeant at arms had exceeded his authority in calling in the aid of the military. And whether there was any privity between *Sir Francis* and the mob or not, their conduct fully justified a resort to an armed force, as a measure of precaution. In *Sherwood v. Marwick*, 5 *Greenl.* 295, there was evidence that the defendant was concerned in the procurement of the false register, of which the other party concerned, *Sutton*, had made a fraudulent use, in his transactions with the plaintiff, and this was such evidence of privity between them, as might properly go to the jury, in determining whether the defendant was implicated or not, by the acts and doings of *Sutton*.

But it is contended that it was not legally competent for the complainant, or the plaintiff, acting in her behalf, to withdraw her prosecution, and to waive further proceedings thereon. — When criminal process has been instituted to bring an offender to justice, public policy requires that it should not be terminated by any understanding between the complainant and the accused, but that it should be pursued until withdrawn by the proper authority, representing the State. But the process re-

sorted to in the case before us, was of a peculiar character. Although in form in the name and behalf of the State, it has the effect of a civil preventive remedy, for the protection of an individual. It is based on his apprehension of danger, which must be shown, however, to have had a reasonable foundation. Now, if before the magistrate, after a hearing, has adjudged sureties of the peace to be necessary, or has required them at the hands of the accused, he has succeeded in quieting and allaying the apprehensions of the complainant, and friendly relations being established between them, the complainant intimates his wish to withdraw a process, afforded expressly for his benefit and the magistrate permits it, we are not aware that the dignity, honour or policy of the law is impaired by such a course. The process has done its office. The benign purpose of the law has been answered. And in accordance with this view of the subject, the prosecuting officer of the government never does in practice press the accused further, when advised that the complainant is satisfied.

In the case before us, the complainant perceived that by the adjustment, there would no longer arise any conflict of claims or rights between them, and being satisfied that she should not be further molested, she acceded to the arrangement proposed; and we are not prepared to pronounce this course of proceeding unlawful.

But if it was, an executed contract cannot upon this ground be disturbed. The law does not interpose for either party, in transactions founded upon an illegal consideration. If such contract be executory, the law will not lend its aid to enforce it, or if executed, to defeat or avoid it. This principle was fully considered in the case of *The inhabitants of Worcester v. Eaton,* 11 *Mass.* 368, and it is in point to show that if the adjustment of the prosecution had been illegal, the deed in question could not be avoided.

It is however insisted that the deed is void, because not given freely and voluntarily, and it is urged, that it cannot be so regarded, if the giving up of the prosecution operated in any degree upon the mind of the grantor. In point of fact the grantor took time to deliberate, asked and received advice, rejected

some propositions, and finally acceded to the terms upon which the business was concluded. These facts afford no evidence that his judgment, or the freedom of his will, was disturbed by the absorbing apprehension of danger. In all human conduct, the preponderating motive determines the will, but if not operated upon by unlawful acts on the part of others, which may constitute a moral compulsion, the mind may be said to act freely. An imprisoned debtor conveys land to his creditor to procure his enlargement; in the eye of the law he acts freely, there being in the case no unlawful restraint or imprisonment. In the case of *Watkins v. Baird,* 6 *Mass.* 506, cited for the defendant, it is stated by *Parsons C. J.* that although the imprisonment be lawful, yet unless the deed be made freely and voluntarily, it may be avoided by duress. Under what circumstances a deed so given might be held not to have been made freely and voluntarily, he does not state. If the imprisonment be lawful in form, but founded upon an abuse of process, it constitutes duress, as was decided in that case. Such imprisonment is held to be unlawful. But if it be lawful, an instrument executed to obtain enlargement cannot be avoided on the ground of duress. And in the case last cited, the Chief Justice says, if a man " supposing that he has a cause of action against an-
" other, by lawful process cause him to be arrested and impris-
" oned, and the defendant voluntarily execute a deed for his
" deliverance, he cannot avoid such deed by duress of imprison-
" ment, although in fact the plaintiff had no cause of action."
A deed so made is made voluntarily, in his sense of the term, although it may have been founded in misapprehension and mistake. We are all of opinion, that none of the objections taken, by the counsel for the defendant, can be sustained.

*Judgment on the verdict.*